IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Angela Chandler, | ) | Civil Action No.  8:13-01331-DCN-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for Social Security Income ("SSI") benefits.[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On January 6, 2011, Plaintiff filed an application for SSI alleging an onset of disability beginning August 1, 2002.  [R. 135–141.][3]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 57–60.]

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

[3]Plaintiff also filed an application for Disability Insurance Benefits ("DIB") [R. 142– 150], but Plaintiff did not qualify for DIB because she had not worked long enough under Social Security.  [R. 68–70.] Plaintiff did not appeal that decision, and it is not before this Court.

Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 83–86], and on January 20, 2012, ALJ Augustus C. Martin conducted a de novo hearing on Plaintiff's claim [R. 27–56]. The ALJ issued a decision on February 14, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 12–26.]

At Step 1,[4] the ALJ found Plaintiff had not engaged in substantial gainful activity since January 6, 2011, the application date. [R. 14, Finding 1.] At Step 2, the ALJ found Plaintiff had the following severe impairments: major depressive disorder and post-traumatic stress disorder (PTSD). [R. 14, Finding 2.] The ALJ also determined Plaintiff's history of alcohol abuse, substance abuse, and obesity were non-severe impairments but that her alleged hand problems constituted a non-medically determinable impairment. [R. 14–15.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 15, Finding 3.] The ALJ specifically considered Listings 12.04, 12.06, and 12.09. [R. 15–16.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can perform only simple, routine and repetitive tasks. Additionally, she is limited to a job that does not require working in close proximity to or close coordination with co-workers and does not require continuous interaction with the public. The claimant also requires a low stress work environment, meaning no production quotas and minimal decision-making.

---

[4] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 17, Finding 4.]   Plaintiff had no past relevant work [R. 20, Finding 5], but considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform.   [R. 20, Finding 9.]   Accordingly, the ALJ concluded Plaintiff had not been under a disability as defined in the Act since January 6, 2011, the date the application was filed. [R. 21, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.   [R. 1-7.]   Plaintiff filed this action for judicial review on May 15, 2013. [Doc. 1.]

### THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred by

(1)     not complying with the requirements of Social Security Ruling 00-4p [Doc. 15 at 5–7];

(2)     failing to consider all of Plaintiff's impairments and their combined effect on her ability to work [*id.* at 7–8]; and

(3)     failing to properly consider Plaintiff's work experience when deciding whether Plaintiff was disabled [*id.* at 8–9].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

(1)     properly relied on testimony from the vocational expert as to the availability of occupations that Plaintiff could perform [Doc. 16 at 9–13];

(2)     considered each of Plaintiff's impairments and their combined effect [*id.* at 13–16]; and

(3)     properly considered Plaintiff's work experience in determining that she could adjust to other work [*id.* at 16–17].

Accordingly, the Commissioner requests that the Court affirm the ALJ's decision.  [*Id.* at 17.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to

determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

5

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.   *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").   After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.   *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).   A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is

6

material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. &*

8

*Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's

9

impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]   20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 416.969a(c)(1).

11

by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").   The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of

the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could

14

reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...

15

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such

16

determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Vocational Expert Testimony**

Plaintiff contends the ALJ erred by failing to comply with the requirements of Social Security Ruling ("SSR") 00-4p in relying on testimony from the vocational expert as to occupations that an individual with Plaintiff's limitations could perform.  [Doc. 15 at 5.] Specifically, Plaintiff argues there "is no testimony from the vocational expert in the transcript that the low stress work requirement set out in the Administrative Law Judge's hypothetical question was or was not consistent with the Dictionary of Occupational Titles (DOT)." [*Id.*]  The Commissioner contends the Plaintiff's argument is contradicted by the record because the vocational expert expressly testified that such a limitation could be accommodated in the occupations she identified.  [Doc. 16 at 10.]

SSR 00–04p provides in pertinent part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not

17

there is such consistency.  Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.

. . . .  The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:

> Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4p, 65 Fed. Reg. 75, 759-01, at 75,760 (Dec. 4, 2000).

### *Hearing Testimony and the ALJ's Decision*

At the hearing, the following colloquy took place between the ALJ and the vocational expert:

> *ALJ*:  If you give us an opinion that conflicts with the information in the Dictionary of Occupational titles will you advise us of the conflict and the basis for your opinion?

18

*VE*:     Yes.

. . .

*ALJ*:    Okay. Okay.  Then let me ask you to assume someone of the same age, education and work experience as the claimant, who has no exertional limitations.  However, the individual can do simple, routine, repetitive tasks in a job that does not require working in close proximity or coordination with coworkers and does not require continuous interaction with the public. Are there any jobs t[h]at exist in the regional or national economy that such a person could perform?

*VE*:     Yes, Your Honor.  One is that of a janitor, medium, the SVP 2. The DOT for this job is 381.687-018, 68,000 in South Carolina, 3,423,000 in the United States.  A warehouse worker, medium, unskilled, SVP of 2.  DOT is 922.687-058, 36,200 in South Carolina, 2,220,000 in the United States.  A tagger, t-a-g-g-e-r for a professional laundry service, medium, unskilled SVP of a 2, DOT is 369.687-026, 2,501 in South Carolina, 236,000 in the United States.

*ALJ*:    Okay.  If in addition the individual made it a low-stress work environment, meaning no production quotas and minimal decision making.  Would that affect the jobs that you've identified.

*VE*:     No, none of them were production.

[R. 52–54.]

The ALJ, in finding that there was work available that Plaintiff could perform,

concluded that

the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. With regard to the low stress work requirements, this limitation is not found within the DOT concerning any occupation. However, the vocational expert testified that it is available with respect to the three occupations she identified. Based upon the provisions of Social Security Ruling 00-04p, the undersigned finds the vocational expert's testimony to be reasonable and reliable, since she has first-hand or professional knowledge with respect to the demands of those occupations.

19

[R. 21.]

### *Discussion*

Here, the Court finds no error in the ALJ's reliance on the VE's testimony or in the ALJ's finding that the VE's testimony was consistent with the DOT. As an initial matter, the ALJ asked, and the VE agreed, to advise the ALJ of any conflicts between his testimony and the DOT. [R. 52–53.] No conflict was identified. Additionally, the VE confirmed that adding a restriction to a low-stress work environment, meaning no production quotas and minimal decision making, did not create a conflict with Plaintiff's ability to perform the jobs identified by the ALJ because none of the jobs were production jobs. Accordingly, the Court finds the ALJ made proper inquiries into the consistency of the VE's testimony with the DOT. Plaintiff, who has the burden of proof at this stage of the evaluation process, has not alleged a conflict actually exists; Plaintiff merely takes issue with the fact that the ALJ did not ask a direct question about the existence of any possible conflicts. [Doc. 15 at 6.] Based on the above, the Court finds the ALJ was justified in relying on the VE's testimony.

**Combined Impairments**

Plaintiff argues the ALJ failed to find Plaintiff's anxiety disorder was either a severe or non-severe impairment and failed to consider the effects of Plaintiff's obesity throughout the evaluation process. [Doc. 15 at 7.] Plaintiff contends the case should be remanded because the ALJ failed to adequately explain his evaluation of the combined effects of Plaintiff's impairments. [*Id.* at 8.] The Commissioner contends that, although the ALJ did not distinguish between PTSD and generalized anxiety disorder, he did consider Plaintiff's anxiety and assessed its severity by considering the requirements of Listing 12.06, which pertains to anxiety related disorders. [Doc. 16 at 14.] The Commissioner also contends

20

the ALJ properly considered the effects of Plaintiff's weight on her ability to work.  [*Id.* at 15.]

### The ALJ's Decision

In his decision, the ALJ noted that Plaintiff had a history of obesity and that he evaluated this impairment "according to the requirements of Social Security Ruling 02-1 p," but that "there is no objective evidence showing the claimant's obesity has hindered her ability to move about and sustain consistent function." [R. 15.]  With respect to Plaintiff's anxiety, the ALJ noted that, in a January 2011 therapy session, Plaintiff "reported some increased depressive and anxiety-related symptoms" due having been recently sexually assaulted by a friend.  [R. 7.]   Additionally, in June 2011, Plaintiff "reported some depressive and anxiety symptoms but stated that she had been without her prescribed psychotropic medications for several days." [*Id.*]  The ALJ also found that Plaintiff suffered from severe impairments of major depressive disorder and post-traumatic stress disorder [R. 14] and evaluated Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders) and 12.09(substance addiction disorders).  [R. 15–16.]  In specifically evaluating Plaintiff's anxiety-related disorders under Listing 12.06, the ALJ found Plaintiff had mild restrictions in her activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation. [R. 16.]  Consequently, the ALJ determined Plaintiff neither met the "paragraph B" or "paragraph C" criteria for Listing 12.06 and, thus, was not disabled under the Listing analysis.  [*Id.*]

### Discussion

Upon review, the Court has failed to discern reversible error in the ALJ's consideration of Plaintiff's obesity in rendering his decision. A plain reading of the decision reflects that the ALJ found Plaintiff's obesity was a non-severe impairment, that he considered the medical evidence concerning the effect this impairment had on Plaintiff's physical abilities in conjunction with the medical evidence concerning Plaintiff's other impairments, and that he considered the effect all of these impairments on Plaintiff's RFC.

With respect to obesity, Plaintiff has offered no argument as to what additional limitations she suffers as a result of her obesity beyond those acknowledged by the ALJ. *Gassaway v. Astrue*, 2009 WL 462704, at *10 (D.S.C. Feb. 23, 2009) (finding no error in the ALJ's assessment of the effect of obesity in combination with claimant's other impairments where claimant offered no argument as to what limitations she would experience as a result of her obesity). Thus, the Court concludes the ALJ properly considered Plaintiff's obesity in determining the effect of this impairment on her ability to work.

With respect to anxiety, Plaintiff is correct that the ALJ failed to specifically state whether Plaintiff's diagnosis of "generalized anxiety" was severe or non-severe; however, upon review of the decision, it is clear that the ALJ took into account Plaintiff's diagnosis of generalized anxiety when considering the effect of her PSTD diagnosis in determining whether she was disabled as a result. The medical evidence of record indicates Plaintiff was being treated at Charleston Department of Mental Health for anxiety, depression, flashbacks, irritability, and sleep/appetite disturbance [R. 363, 366], but her diagnosis was major depression, recurrent, PTSD, and PSA (substance abuse)-in remission [R. 364, 367,

369], suggesting that her anxiety was a symptom of her PTSD or somehow related to her PTSD and not a separate disagnosis.

Upon review of the entire decision, the undersigned finds that the ALJ considered Plaintiff's limitations with regard to her mental functioning in his RFC analysis. Specifically, the ALJ explained

> The undersigned has considered the depression, PTSD and allegations of limited social interaction and irritability in limiting her to simple, routine and repetitive tasks in a low-stress work environment and by limiting her contact with others. While the claimant's testimony of limited activities may be true, there are no objective abnormalities to suggest that she is precluded from performing the above residual functional capacity assessment.

[R. 19.] Although the ALJ did not mention anxiety as a separate impairment, Plaintiff has failed to indicate any limitation cause by the anxiety that was not considered by the ALJ in addressing Plaintiff's limitations caused by PTSD. *See, e.g., Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that an ALJ's failure to include a claimant's bursitis among his impairments at Step Two of the sequential evaluation was harmless error because the ALJ discussed the medical evidence and limitations relating to that impairment at Step Four of the sequential evaluation). Here, the ALJ considered anxiety at Step 3 in conducting the listing analysis under Listing 12.06 and found Plaintiff's anxiety-related impairments resulted in mild restrictions in her activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation.[9]  [R. 16.]  The ALJ's finding that Plaintiff's anxiety did not

---

[9]Listing 12.06 is the listed for anxiety related disorders and requires a plaintiff to prove, among other things, that her mental impairments resulted in at least two of the following: marked restrictions in the activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404,

meet or medically equal the severity of Listing 12.06 is supported by the findings of Dr. Michael Neboschick ("Dr. Neboschick") [*see* R. 305–317 (Psychiatric Review Technique evaluating Listings 12.04, 12.06, and 12.09)] and Dr. Lisa Clausen ("Dr. Clausen") [*see* R. 344–356], who both indicated that they considered Plaintiff's PTSD and general anxiety disorder with panic in evaluating Listing 12.06 [R. 310, 349].  Accordingly, even if the ALJ failed to include anxiety as a separate impairment at Step 2, such error was harmless.

**Prior Failed Work Experiences**

Plaintiff alleges the ALJ should have taken into account Plaintiff's multiple failed attempts to engage in gainful employment in determining whether she was "able to sustain gainful employment." [Doc. 15 at 9.]  According to Plaintiff, "Although prior work experience is most often considered on the issues of whether a claimant can perform past relevant work or if a claimant has transferable skills, it also can be evidence of how a claimant's impairments adversely affects her ability to hold down a job."  [*Id.*]  The Commissioner contends that in finding Plaintiff could make an adjustment to other work, the ALJ twice expressly explained that he had considered Plaintiff's work experience and likewise considered her past difficulties "when evaluating Plaintiff's social functioning and in assessing her allegations as to the disabling effects of her impairments."  [Doc. 16 at 16.]

Here, Plaintiff testified that she tried to work but either got laid off or fired [R. 37] and that she had been fired for "moving too slow," "forgetting things," and having altercations

---

Subpt. P, App. 1.

with co-workers [R. 47–48].  The ALJ referenced this testimony in the decision.  [R. 15, 17.]  The ALJ also noted Plaintiff's work history in finding that, although she had worked in the past, the work was sufficiently limited that it did not constitute past relevant work as defined by the regulations.  [R. 20.]  Moreover, the ALJ stated that he considered Plaintiff's work experience in making the finding that Plaintiff could make an adjustment to other work.  [R. 20–21.]  Accordingly, the record does not support Plaintiff's argument that the ALJ failed to properly consider Plaintiff's work experience.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 4, 2014
Greenville, South Carolina